B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (For Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **Kathleen P. Dwyer** **Chapter 7 Trustee** | **Lorraine Drumm** **David K. Drumm** **Anne Marie Greenberg** |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| **Murphy & King** **Professional Corporation** **One Beacon Street** **Boston, MA 02108** **(617) 423-0400 Fax: (617) 423-0498** | **Looney & Grossman LLP** **101 Arch Street** **Boston, MA 02110** **Craig and Macauley P.C.** **600 Atlantic Avenue, Boston, MA 02210** |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| [ ] Debtor  [ ] U.S. Trustee/Bankruptcy Admin [ ] Creditor  [ ] Other [X] Trustee | [X] Debtor  [ ] U.S. Trustee/Bankruptcy Admin [ ] Creditor  [ ] Other [ ] Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
**Recovery of fraudulent transfers pursuant to Section 548 and 544, declaratory judgement that interests in certain real property should be held in constructive or resulting trust, authority to sell real property pursuant to Section 363(h), injunctive relief restraining distribution of proceeds of sale of real property and recovery of preferential payments pursuant to Section 547.**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[ 1 ] 13-Recovery of money/property - §548 fraudulent transfer
[ 2 ] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ 3 ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ 5 ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ 4 ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br>David K. Drumm | | BANKRUPTCY CASE NO.<br><br>**10-21198-FJB** |
| DISTRICT IN WHICH CASE IS PENDING<br><br>**District of Massachusetts** | DIVISION OFFICE<br><br>Eastern | NAME OF JUDGE<br><br>Bailey |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br><br>**/s/ Andrew G. Lizotte** | | |
| DATE<br>September 12, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>**Andrew G. Lizotte, Esq.** | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>DAVID K. DRUMM,<br><br>Debtor. | Case No. 10-21198-FJB |
| KATHLEEN P. DWYER, TRUSTEE OF THE CHAPTER 7 ESTATE OF DAVID K. DRUMM,<br><br>Plaintiff,<br><br>v.<br><br>LORRAINE DRUMM, Individually and as Beneficiary of Epiphany Nominee Trust, DAVID K. DRUMM, ANNE MARIE GREENBERG, as she is the Trustee of the Epiphany Nominee Trust,<br><br>Defendants. | Adv. Proc. No.: 11- |

**COMPLAINT FOR: (1) RECOVERY OF FRAUDULENT TRANSFERS; (2) IMPOSITION OF CONSTRUCTIVE OR RESULTING TRUST; (3) TERMINATION OF EPIPHANY NOMINEE TRUST; (4) AUTHORITY TO SELL INTEREST OF DEBTOR AND NONDEBTOR SPOUSE IN REAL PROPERTY; (5) RECOVERY OF PREFERENTIAL TRANSFERS; AND (6) REQUEST FOR INJUNCTIVE RELIEF**

NATURE OF THE ACTION

From January 2005 through December 2008, the Debtor served as chief executive officer ("CEO") of Anglo Irish Bank ("Anglo"), one of the largest financial institutions in the Republic of Ireland.  Anglo failed and was nationalized in January 2009.  The Debtor's livelihood and a substantial portion of his net worth were dependent upon the continued successful operation and

profitability of Anglo. As CEO and a member of the board of directors, the Debtor had intimate

knowledge of Anglo's financial condition. The Debtor was well aware of the adverse impact

that Anglo's financial decline would have on the Debtor's financial condition. Using this

superior knowledge of Anglos's financial deterioration and in order to protect himself from the

consequences thereof, the Debtor embarked upon a scheme to convey his assets from the reach

of his creditors by engaging in a series of transfers to his spouse Lorraine Drumm ("Mrs.

Drumm") for little or no consideration. The transfers included, among other things, numerous

cash payments totaling more than $2,000,000, the transfer to Mrs. Drumm of mortgage loan

proceeds from previously unencumbered jointly owned property, the grant of an interest to Mrs.

Drumm in property in Chatham, Massachusetts funded with $4,200,000 of the Debtor's cash,

and the establishment of a sham trust used to purchase the Drumms' residence in Wellesley,

Massachusetts.[1]

The Trustee brings this complaint (the "Complaint") pursuant to 11 U.S.C. §§363(h),

544, 547 and 548 and Rule 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure, among

other things, to undo those fraudulent transfers and recover those transfers or their value for the

benefit of the Debtor's Chapter 7 estate and, ultimately, his creditors.

## PARTIES

1.      The Plaintiff, Kathleen P. Dwyer, is the duly-appointed trustee ("Trustee") of the

Chapter 7 bankruptcy estate of David Drumm ("Debtor"), having been so appointed on October

15, 2010. Her principal place of business is at MacLean Holloway Doherty Ardiff & Morse,

P.C., 8 Essex Center Drive, Peabody, Massachusetts.

---

[1] Many of the aforementioned transfers were not properly disclosed by the Debtor in his schedules and statement of financial affairs. The Debtor's failure to accurately account under oath for his prepetition transfers is in part the basis for the Trustee's Complaint to deny the Debtor's discharge which has been filed (Adv. Proc. No. 11-1268).

2.      The Defendant Lorraine Drumm is an individual residing at 73 Old Colony Road, Wellesley, Massachusetts.

3.      The Defendant David Drumm is an individual residing at 73 Old Colony Road, Wellesley, Massachusetts.

4.      The Defendant Anne Marie Greenberg is the Trustee of Epiphany Nominee Trust. Ms. Greenberg has a principal place of business at Coldwell Banker, 447 Boston Post Road, Sudbury, Massachusetts.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157 and 1334. On October 14, 2010 (the "Petition Date"), a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code ("Bankruptcy Code") was filed by the Debtor.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1409.

7.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) & (O).

8.      The statutory predicates for relief include, but are not limited to, Sections 363(h), 544, 547 and 548 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure ("FRBP") 7001 *et seq.*

## FACTUAL BACKGROUND

### I.    The Debtor's Descent Into Insolvency Along With Anglo Irish Bank

9.      The Debtor, an accountant by training, commenced employment with Anglo in May 1993. Thereafter, the Debtor was promoted, sequentially, to Lending Manager, Associate Director, and Head of Lending for the Ireland Division. Ultimately, in January 2005, he became CEO of Anglo and a member of Anglo's board of directors.

10.     By January 2005, when the Debtor assumed the position of CEO, Anglo had made substantial commitments to developing a loan portfolio heavily concentrated in real estate. Anglo continued to concentrate its lending toward real estate throughout the Debtor's tenure as CEO.   The Debtor knew that a significant deterioration in the real estate market would have a substantial adverse impact upon Anglo's financial viability and the value of the Debtor's stock in Anglo.

11.     By mid 2007, the Debtor and other executive officers of Anglo were aware of the declining real estate market and the corresponding decline in the financial condition of Anglo.

12.     In late 2007 and early 2008, Sean Fitzpatrick, the chairman of Anglo, required senior officers of Anglo, including the Debtor, to purchase Anglo stock or exercise Anglo stock options to prop up the value of Anglo's stock.   In accordance with this directive, in January 2008, the Debtor borrowed approximately $11,000,000 from Anglo (the "2008 Facility Letter") to exercise his Anglo stock options and to extend certain existing indebtedness of the Debtor to Anglo.   While the 2008 Facility Letter appears to provide that the loan is nonrecourse, the Debtor has testified throughout these proceedings that the loan was always intended to be recourse.

13.     Beginning as early as 2006, the Debtor participated, approved, and/or had knowledge of a series of improper transactions of a type required to be disclosed and which were not disclosed in Anglo's financial statements or otherwise publicly disclosed, including the following:

> (i)     Substantial insider loans by Anglo to Mr. Fitzpatrick, concealed through a practice known as loan "warehousing" by which Mr. Fitzpatrick's loans from Anglo were refinanced with other institutions for a matter of several

4

days, through and including the September 30 fiscal year end, in order to

exclude the loans from inclusion in year end statements;

(ii)    The acquisition by Sean Quinn, an investor and substantial borrower of

Anglo, of more than twenty-five percent (25%) of the stock of Anglo

through the use of Contracts for Difference, or derivative positions;

(iii)    The surreptitious negotiation and execution of nonrecourse loans by Anglo

to several of Anglo's largest customers in order to fund the purchase of

Mr. Quinn's Anglo stock position, and thus reduce Anglo's exposure to

Mr. Quinn's financial circumstances.

14.    As a result of Anglo's decline, the Debtor's multimillion dollar compensation

arrangement with Anglo was at risk, and the substantial loan the Debtor took out with Anglo in

January 2008 to exercise Anglo stock options became secured by mainly worthless shares of

Anglo, leaving the Debtor exposed on an $11,000,000 demand obligation to Anglo.

15.    The Debtor resigned from his position as CEO of Anglo in December 2008, and

Anglo was nationalized due to its financial difficulties on or about January 21, 2009.

16.    In November 2009, Anglo commenced litigation against the Debtor before the

High Court in Dublin (the "Irish Litigation") seeking, among other things, payment of amounts

advanced pursuant to the 2008 Facility Letter in the approximate amount of €8.4 million ($12.5

million) and avoidance of the fraudulent transfer by the Debtor to Mrs. Drumm of his interest in

the real property located at 20 Abington, Malahide Co., Dublin, Ireland (the "Malahide

Property").

II.   **The Debtor Initiates A Scheme To Shield His Assets From Creditors By Transferring Them To Mrs. Drumm**

17.   Commencing in the fall of 2007 and continuing throughout 2008 and 2009, the Debtor and Mrs. Drumm orchestrated a series of transfers by which the Debtor shifted his assets to Mrs. Drumm (i) with the intention to hinder, delay, or defraud the creditors of the Debtor or (ii) without receiving reasonably equivalent value in return for the transfers and at a time when (a) the Debtor was insolvent or became insolvent because of such transfers, (b) the Debtor was left with unreasonably small capital as a result of such transfers or (c) the Debtor intended or believed that he would incur debts beyond his ability to pay.

18.   The transfers were numerous, involving millions of dollars, and yet most were omitted from the required disclosures in the Debtor's schedules and statement of financial affairs filed on October 29, 2010 (the "Schedules and Statements").

A.   **The Debtor Transfers Millions Of Dollars In Cash To Mrs. Drumm**

19.   The Debtor and Mrs. Drumm were married in 1991.

20.   At least for the thirteen years preceding the Petition Date, the Debtor's income from Anglo comprised substantially all of the income of the Drumm family. Further, a substantial portion of the Drumms' family net worth consisted of the Anglo stock the Debtor had accumulated. Mrs. Drumm has not had outside employment since at least 1997.

21.   Throughout the history of his marriage to Mrs. Drumm, the Debtor controlled the family finances. The Debtor directed the family's investments and controlled the receipt and disbursement of funds. Prior to the fall of 2008, virtually all of the bank accounts for the Drumm family were held solely in the name of the Debtor, except for a few joint accounts. Prior to September 2008, Mrs. Drumm had not maintained bank accounts solely in her name in at least ten years.

22.    Beginning in September 2008, Mrs. Drumm, for the first time since the beginning
of the Drumms' marriage, began to open bank accounts solely in her name.   In the two years
prior to the Petition Date, Mrs. Drumm opened the following accounts solely in her name:

      a)      Boston Private Bank (account number ending in 263);

      b)      Boston Private Bank (account number ending in 224);

      c)      Boston Private Bank (account number ending in 075);

      d)      Cape Cod (account number ending in 869);

      e)      Cape Cod (account number ending in 816);

      f)      Allied fixed term (account number ending in 080);

      g)      Allied fixed term (account number ending in 163);

      h)      Allied fixed term (account number ending in 247);

      i)      Allied US Dollar hold account (account number ending in 500);

      j)      New Century House (ICS) (account number ending in 530);

      k)      Anglo (account number ending in 539/01);

      l)      Citygold (account number ending in 614);

      m)     Rockland Trust (account number ending in 642);

      n)      Rockland Trust (account number ending in 659);

      o)      TD Bank (account number ending in 969).

23.    The Debtor made a series of cash transfers to Mrs. Drumm. The transfers, as
further set forth below, consisted of: (a) substantial transfers of money from bank accounts
maintained solely in the name of the Debtor to accounts either in the name of the Debtor and
Mrs. Drumm, or to accounts standing solely in the name of Mrs. Drumm; and (b) transfers from

jointly held bank accounts to accounts held solely by Mrs. Drumm (collectively, the "Cash

Transfers"):

| Date of Transfer | Originating Account | Receiving Account | Amount |
|---|---|---|---|
| March 19, 2008 | Debtor's Anglo account ending in 668 | Joint Cape Cod account, ending in 7073 | $200,000.00 |
| September 24, 2008 | Debtor's Anglo account ending in 668 | Mrs. Drumm's Anglo account ending in 539/01 | €150,000.00 |
| November 3, 2008 | Joint account at Allied, account ending in 010 | Mrs. Drumm's Allied Fixed Term account ending in 080 | €80,000.00 |
| November 3, 2008 | Debtor's Anglo account ending in 668 | Mrs. Drumm's Anglo account ending in 539/01 | €50,000.00 |
| December 12, 2008 | Joint Allied account, ending in 010 | Mrs. Drumm's Allied Fixed Term account ending in 247 | €180,000.00 |
| December 15, 2008 | Joint Allied account, ending in 010 | Mrs. Drumm's Allied Fixed Term account, ending in 247 | €372,561.00 |
| June 15, 2009 | Joint Cape Cod account, ending in 8424 | Mrs. Drumm's Allied US Dollar hold account, ending in 500 | $99,991.05 |
| July 27, 2009 | Joint Allied US Dollar account | Mrs. Drumm's Cape Cod account, ending in 9869 | $280,028.78 |
| August 13, 2009 | Joint Allied US Dollar account | Mrs. Drumm's Cape Cod account, ending in 9869 | $282,535.00 |
| September 12, 2009 | Debtor's Cape Cod account, ending in 9109 | Joint Cape Cod account, ending in 7073 | $1,500.00 |
| September 18, 2009 | Cape Cod account of Harborlight (Debtor's business), ending in 9737 | Joint Cape Cod account, ending in 7073 | $1,000.00 |

8

| September 19, 2009 | Debtor's Cape Cod account, ending in 9019 | Joint Cape Cod account, ending in 7073 | $1,000.00 |
| September 28, 2009 | Debtor's Cape Cod account, ending in 9109 | Joint Cape Cod account, ending in 7073 | $3,000.00 |

**B.    The Stage Neck Property Transfer**

24.    In March 2008, the Debtor purchased residential real property located at 262 Stage Neck Road, Chatham, Massachusetts (the "Stage Neck Property") in the name of the Debtor and Mrs. Drumm for a purchase price of $4,600,000. The Debtor invested an additional $600,000 in improvements in the Stage Neck Property, for total consideration of approximately $5,200,000 (the "Acquisition Price").

25.    The Acquisition Price was funded with a $1,000,000 loan made by Cape Cod Five Cents Savings to the Debtor and Mrs. Drumm, and $4,200,000 in cash.

26.    The Debtor funded all or substantially all of the cash component of the Acquisition Price.

27.    Mrs. Drumm did not contribute any cash to the acquisition.

28.    Notwithstanding that Mrs. Drumm made no cash contribution to the acquisition of the Stage Neck Property, Mrs. Drumm was deeded an interest in the property as tenant by the entirety with the Debtor.

29.    On July 12, 2009, the Debtor executed a declaration of homestead, claiming the Stage Neck Property to be his principal residence. The declaration of homestead was recorded on or about July 24, 2009. The Stage Neck Property, however, was not the Debtor's principal residence, as required by Massachusetts' homestead law.

30.     Soon after the recordation of the homestead declaration, the Debtor leased real property located at 30 Alba Road in Wellesley, Massachusetts ("Alba Road Property").  The Alba Road Property served as the Debtor's principal residence from August 2009 until January 2010, at which time the Debtor acquired the property at 73 Old Colony Road in Wellesley, Massachusetts (the "Wellesley Property") where the Debtor now resides with his family.

31.     At all relevant times, the Debtor and his family used the Alba Road Property and, later, the Wellesley Property as their principal residence to enable the Debtor's children to attend school in Newton, Massachusetts.

### C.     The Wellesley Property Transfer

32.     The Wellesley Property was purchased on or about January 6, 2010 for a purchase price of $2,041,891.

33.     The purchase was made in the name of the Epiphany Nominee Trust ("Epiphany Trust").  The Debtor established the Epiphany Trust so that his interest in the Wellesley Property would not be made public.

34.     The Debtor and Mrs. Drumm are fifty percent (50%) beneficiaries of the Epiphany Trust.

35.     Anne Marie Greenberg, the trustee of the Epiphany Trust, is upon information and belief a friend of Mrs. Drumm.

36.     The purchase was funded with a loan from Boston Private Bank and Trust Company ("Boston Private") in the original principal amount of $1,230,000, as well as approximately $830,000 in cash.

10

37.     The cash component of the purchase price was paid from Mrs. Drumm's Boston Private account.   These funds were derived from the fraudulent transfer of the Debtor's earnings and property interests to Mrs. Drumm in 2008 and 2009.

38.     The Epiphany Trust granted a purchase money mortgage to Boston Private to secure repayment of the loan in the amount of $1,230,000.  The Debtor co-signed the promissory note, as his earnings were the only source of repayment of the mortgage loan indebtedness.

39.     In connection with the Wellesley Property acquisition, the Debtor and Mrs. Drumm entered into a "Separate Property Agreement" (the "Property Agreement"), which purported to define the respective rights of the Debtor and Mrs. Drumm in the Wellesley Property.

40.     The Property Agreement stated that the Debtor and Mrs. Drumm agreed that the money used to purchase the Wellesley Property, totaling $831,106.91 (the "Deposit Funds") "belonged to and was owned exclusively by Wife and that Husband had no past, present, or future right or interest in said money…"  The Property Agreement went on to provide that any ownership interest in the Wellesley Property derived from the Deposit Funds were the exclusive, separate, and sole property of Mrs. Drumm.

41.     The representation in the Property Agreement that the Debtor had no interest in the Deposit Funds, including no past interest in the funds, was blatantly false and an attempt to conceal the Debtor's interest in the Wellesley Property.

### D.     Other Transfers Made to Mrs. Drumm

42.     In addition to the numerous Cash Transfers, the Stage Neck Property transfer and the machinations associated with the Wellesley Property, the Debtor orchestrated a series of other transfers to Mrs. Drumm to dilute and dispose of his interests in real and personal property.

11

### i.    The Skerries Rock Transfer

43.    At all relevant times, the Debtor and Mrs. Drumm jointly owned residential real property located at 11 The Way, Skerries Rock, Co. Dublin, Ireland ("Skerries Rock") as an investment.

44.    During the period from 2006 to 2008, the Skerries Rock property was unencumbered.

45.    In December 2008, the Debtor and Mrs. Drumm granted a mortgage on the Skerries Rock property to secure a loan in the amount of €250,000.

46.    All of the loan proceeds were deposited into Mrs. Drumm's Allied Irish Bank Fixed Term account (ending in number 247).

47.    The Debtor received no proceeds from the loan secured by the jointly owned Skerries Rock property.

### ii.    The 173 Cross Street Transfer

48.    In late 2007, the Debtor entered into a joint venture with Michael Barnett to develop residential real property located at 173 Cross Street in Chatham, Massachusetts (the "Cross Street Property").

49.    Prior to September 30, 2008, the Cross Street Property was owned solely by Mr. Barnett.

50.    On September 30, 2008, Mr. Barnett transferred his interest in the Cross Street Property to the Debtor, subject to a mortgage granted to Cape Cod to secure an obligation in the approximate amount of $1,600,000.

51.    On October 20, 2008, the Debtor transferred his interest in the Cross Street Property to himself and Mrs. Drumm for nominal consideration.

12

52.    In September 2009, the Debtor and Mrs. Drumm sold their interest in the Cross Street Property to the Porch Light Trust for the sum of $2,365,000, generating net proceeds from the sale of more than $400,000.

53.    One half of the net sale proceeds of the Cross Street Property were transferred into Mrs. Drumm's Cape Cod account (ending in number 869). The remaining one-half of the net sale proceeds was paid to the Debtor.

### iii.    The Malahide Property Transfer

54.    The Malahide Property served as the principal residence of the Debtor and Mrs. Drumm from 2003 to 2009. In May 2009, the Debtor and Mrs. Drumm transferred ownership of the Malahide Property to Mrs. Drumm alone for nominal consideration.

55.    As a result of the Irish Litigation, title to the Malahide Property was revested with the Trustee, as representative of the Debtor, and Mrs. Drumm.

### iv.    Transfer Of Proceeds Of Range Rover Sale

56.    Prior to May 5, 2009, the Debtor owned and held title to a Range Rover automobile.

57.    On or about May 5, 2009, the Debtor sold his interest in the Range Rover automobile for the sum of €36,000. The sale proceeds were deposited into Mrs. Drumm's Allied Irish Bank Fixed Term bank account (ending in number 247).

### v.    Transfer Of Proceeds Of BMW Sale

58.    Prior to September 7, 2009, the Debtor owned and held title to a BMW automobile.

59.     On or about September 7, 2009, the Debtor sold his interest in the BMW automobile. The sale proceeds of approximately €20,000 were deposited into the Drumms' joint Allied Irish Bank account (ending in number 054).

**E.      Fictitious Loan by Mrs. Drumm to the Debtor**

60.     In his Schedules and Statements, the Debtor listed a purported "working capital loan" from Mrs. Drumm (the "Fictitious Loan") and characterized various subsequent intraspousal transactions as "loans repayments" in order to recharacterize household and personal expenses as loan repayments and to conceal fraudulent transfers to Mrs. Drumm.

61.     The Debtor stated in his Schedules and Statements that the outstanding balance of the Fictitious Loan as of the Petition Date was $210,347.00.   The Debtor later amended his Schedules and Statements to change the Petition Date loan balance to $216,840.69.

62.     In his Schedules and Statements, the Debtor disclosed $50,093.00 in alleged loan repayments to Mrs. Drumm within one year prior to the Petition Date.   In his amended schedules and statements, the Debtor changed the amount repaid to Mrs. Drumm within one year of the Petition Date to $73,250.00.

63.     The Debtor and Mrs. Drumm did not document the Fictitious Loan.

64.     The source of the Fictitious Loan was the Debtor's earnings and other property interests that were held in joint bank accounts or the Debtor's bank account.

65.     The Fictitious Loan was allegedly made to provide capital to the Debtor's new business, then Harborlight Capital Partners, LLC, later renamed Delta Corporate Finance, LLC (the "Business").

66.     The Business never matured beyond a one person consulting operation, with only one client at any given time, and was never profitable.

14

67.     In August 2011, the Debtor stated that he had closed the Business and now consults directly without the corporate form.  The Debtor further stated that the funds in the Business bank account were nearly exhausted.

68.     Mrs. Drumm never filed a proof of claim to substantiate the Fictitious Loan.

69.     The Fictitious Loan was a sham transaction designed to enable the Debtor to qualify for a temporary visa to live in the United States, to use the funds, now shielded in an account for the Business, as a personal piggybank to spend on the Debtor's personal expenses, and to disguise and conceal the transfers made to Mrs. Drumm.

## COUNT I
## RECOVERY OF FRAUDULENT TRANSFER  (11 U.S.C. §548)

70.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

71.     Within two years of the Petition Date, the Debtor made the following avoidable transfers to or for the benefit of Mrs. Drumm:

    (a)     The Cash Transfers (excluding the transfers made more than two years prior to the Petition Date);

    (b)     The transfer of the Debtor's interest in the Cross Street Property to Mrs. Drumm;

    (c)     the acquisition of the Wellesley Property in the name of the Epiphany Trust;

    (d)     The transfer of the sale proceeds of the Range Rover to Mrs. Drumm;

    (e)     The transfer of the sale proceeds of the BMW to Mrs. Drumm;

    (f)     The transfer of the Debtor's interest in the loan proceeds generated from the mortgage granted upon the Skerries Rock property; and

15

(g)     the repayments on the Fictitious Loan.

72.     The transfers and obligations identified in this Count I herein (collectively, the "Section 548 Transfers") were made with actual intent by the Debtor to hinder, delay or defraud creditors to which the Debtor was or became, on or after the date that such transfers were made or such obligations were incurred, indebted.

73.     The Trustee may avoid the Section 548 Transfers pursuant to 11 U.S.C. §548(a)(1)(A) and preserve and recover such avoided transfers for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§550, 551.

## COUNT II
## RECOVERY OF FRAUDULENT TRANSFER  (11 U.S.C. §548)

74.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

75.     The Debtor received less than a reasonably equivalent value in exchange for the Section 548 Transfers to Mrs. Drumm.

76.     The Debtor was insolvent when the Section 548 Transfers were made, or became insolvent as a result of such transfers.

77.     The Debtor was engaged in a business or a transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital at the time the Section 548 Transfers were made.

78.     The Debtor intended to incur, or believed that he would incur, debts that would be beyond the Debtor's ability to pay as such debts matured at the time the Section 548 Transfers were made.

79.     The Trustee may avoid the Section 548 Transfers pursuant to 11 U.S.C.

§548(a)(1)(B) and preserve and recover such avoided transfers for the benefit of the bankruptcy

estate pursuant to 11 U.S.C. §§550, 551.

### COUNT III
### RECOVERY OF FRAUDULENT TRANSFER
### (11 U.S.C. §544, M.G.L. Ch. 109A, §5(a)(1))

80.     Plaintiff repeats and realleges the allegations set forth above as though fully set

forth herein.

81.     Pursuant to 11 U.S.C. §544, the Trustee may avoid any transfer of an interest of

the Debtor in property, or any obligation incurred by the Debtor, that is voidable under

applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502.

82.     The following transfers were made to or for the benefit of Mrs. Drumm, an insider

of the Debtor (collectively, the "Section 544 Transfers):

> (a)  the Cash Transfers;

> (b) the transfer of the Debtor's funds to acquire the Stage Neck Property;

> (c) The transfer of the Debtor's interest in the Cross Street Property to Mrs.
>     Drumm;

> (d) The acquisition of the Wellesley Property in the name of the Epiphany Trust;

> (e) The transfer of the sale proceeds of the Range Rover to Mrs. Drumm;

> (f) The transfer of the sale proceeds of the BMW to Mrs. Drumm;

> (g) The repayments to Mrs. Drumm on account of the Fictitious Loan; and

> (h) The transfer of the Debtor's interest in the loan proceeds generated from the
>     mortgage granted upon the Skerries Rock property to Mrs. Drumm;

83.     The Section 544 Transfers were made to Mrs. Drumm, an insider of the Debtor.

17

84.    The Debtor retained possession or control over the property transferred after the Section 544 Transfers were made.

85.    The Section 544 Transfers were concealed.

86.    The value of the consideration received by the Debtor for the Section 544 Transfers was not reasonably equivalent to the value of the assets transferred or obligations incurred.

87.    The Debtor was insolvent or was rendered insolvent shortly after the Section 544 Transfers were made.

88.    The Section 544 Transfers occurred shortly after the Debtor incurred a substantial indebtedness to Anglo.

89.    The Section 544 Transfers were made to Mrs. Drumm with actual intent to hinder, delay, or defraud a creditor of the Debtor.

90.    As of the Petition Date, there existed a creditor of the Debtor holding an unsecured claim allowable under 11 U.S.C. §502 who could avoid the Section 544 Transfers under applicable Massachusetts law.

91.    The Section 544 Transfers may be avoided by the Trustee pursuant to 11 U.S.C. §544, and Mass. General Laws Ch. 109A, §5(a)(1), and the avoided transfers may be preserved and recovered for the benefit of the estate pursuant to 11 U.S.C. §§550, 551.

**COUNT IV**
**RECOVERY OF FRAUDULENT TRANSFER**
**(11 U.S.C. §544, M.G.L. Ch. 109A, §5(a)(2))**

92.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

18

93.     Pursuant to 11 U.S.C. §544, the Trustee may avoid any transfer of an interest of the Debtor in property, or any obligation incurred by the Debtor, that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502.

94.     The Debtor did not receive a reasonably equivalent value in exchange for the Section 544 Transfers.

95.     The Debtor was engaged, or was about to engage, in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction at the time the Section 544 Transfers were made.

96.     The Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due at the time the Section 544 Transfers were made.

97.     As of the Petition Date, there existed a creditor of the Debtor holding an unsecured claim allowable under 11 U.S.C. §502 who could avoid the Section 544 Transfers under applicable Massachusetts law.

98.     The Section 544 Transfers may be avoided by the Trustee pursuant to 11 U.S.C. §544, and Mass. General Laws Ch. 109A, §5(a)(2), and the avoided transfers may be preserved and recovered for the benefit of the estate pursuant to 11 U.S.C. §§550, 551.

### COUNT V
### RECOVERY OF FRAUDULENT TRANSFER
### (11 U.S.C. §544, M.G.L. Ch. 109A, §6(a))

99.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

100.    Pursuant to 11 U.S.C. §544, the Trustee may avoid any transfer of an interest of the Debtor in property, or any obligation incurred by the Debtor, that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. §502.

101.    The Debtor did not receive a reasonably equivalent value in exchange for the Section 544 Transfers.

102.    The Debtor was insolvent at the time the Section 544 Transfers were made or became insolvent as a result of making the Section 544 Transfers.

103.    As of the Petition Date, there existed a creditor of the Debtor holding an unsecured claim allowable under 11 U.S.C. §502 who could avoid the Section 544 Transfers under applicable Massachusetts law.

104.    The Section 544 Transfers may be avoided by the Trustee pursuant to 11 U.S.C. §544, and Mass. General Laws Ch. 109A, §6(a), and the avoided transfers may be preserved and recovered for the benefit of the estate pursuant to 11 U.S.C. §§550, 551.

**COUNT VI**
**DECLARATORY JUDGMENT**
**CONSTRUCTIVE/RESULTING TRUST – WELLESLEY PROPERTY**

105.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

106.    An actual controversy exists with respect to Mrs. Drumm's interest in the Wellesley Property and whether a resulting or constructive trust for the benefit of creditors of the Debtor should be imposed on her asserted interest.

107.    All of the funds used to acquire the Wellesley Property were derived solely from the Debtor.

108.    Mrs. Drumm acquired her interest in the Wellesley Property with funds transferred to her by the Debtor.

20

109.   Mrs. Drumm acquired her interest in the Wellesley Property for the purpose of holding that interest for the benefit of the Debtor.

110.   A resulting trust should be imposed upon Mrs. Drumm's interest in the Wellesley Property for the benefit of the Trustee.

111.   Alternatively, Mrs. Drumm acquired her interest in the Wellesley Property as part of a scheme to defraud creditors of the insolvent Debtor,

112.   Mrs. Drumm would be unjustly enriched by her retention of an interest in the Wellesley Property.

113.   A constructive trust for the benefit of the Trustee should be imposed on Mrs. Drumm's interest in the Wellesley Property.

**COUNT VII**
**DECLARATORY JUDGMENT**
**CONSTRUCTIVE/RESULTING TRUST – STAGE NECK PROPERTY**

114.   Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

115.   An actual controversy exists with respect to Mrs. Drumm's interest in the Stage Neck Property and whether a resulting or constructive trust for the benefit of creditors of the Debtor should be imposed on her asserted interest.

116.   All of the funds used to acquire the Stage Neck Property were derived from the Debtor.

117.   Mrs. Drumm acquired her interest in the Stage Neck Property through funds provided by the Debtor.

118.   Mrs. Drumm acquired her interest in the Stage Neck Property for the purpose of holding that interest for the benefit of the Debtor.

21

119.   A resulting trust should be imposed upon Mrs. Drumm's interest in the Stage Neck Property for the benefit of the Trustee.

120.   Alternatively, Mrs. Drumm acquired her interest in the Stage Neck Property as part of a scheme to defraud creditors of the insolvent Debtor.

121.   Mrs. Drumm would be unjustly enriched by her retention of an interest in the Stage Neck Property.

122.   A constructive trust for the benefit of the Trustee should be imposed on Mrs. Drumm's interest in the Stage Neck Property.

## COUNT VIII
## TERMINATION OF EPIPHANY NOMINEE TRUST

123.   Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

124.   The Debtor is a beneficiary of the Epiphany Trust.

125.   Section 5 of the Epiphany Trust provides that such trust may be terminated by a written notice signed and acknowledged by any beneficiary and delivered to the trustee of the Epiphany Trust and the other beneficiaries, if any, and the trustee of the Epiphany Trust shall thereupon record a certificate of termination pursuant to the Declaration of Trust.

126.   Upon termination of the Epiphany Trust, the Wellesley Property reverts to the Debtor and Mrs. Drumm, the beneficiaries, as tenants in common.

127.   The Trustee is authorized, as the representative of the Debtor, to terminate the Epiphany Trust.

## COUNT IX
## AUTHORITY TO SELL WELLESLEY PROPERTY (11 U.S.C. §363(h))

128.   Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

129.   Upon the termination of the Epiphany Trust, to the extent the Court does not impose a resulting or constructive trust upon the Wellesley Property for the benefit of creditors of the Debtor, the Wellesley Property shall be owned as tenants in common by the Debtor and Mrs. Drumm.

130.   Partition in kind of the Wellesley Property among the bankruptcy estate and Mrs. Drumm is impracticable.

131.   The sale of the estate's undivided interest in the Wellesley Property would realize significantly less for the estate than the sale of such property free of the interests of Mrs. Drumm.

132.   The benefit to the estate of a sale of the Wellesley Property free of the interests of Mrs. Drumm outweighs the detriment, if any, to Mrs. Drumm.

133.   The Wellesley Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

134.   The Trustee may sell the interest of the Debtor and Mrs. Drumm in the Wellesley Property pursuant to 11 U.S.C. §363(h).

## COUNT X
## RECOVERY OF PREFERENTIAL TRANSFERS (11 U.S.C. §547)

135.   Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

136.    The repayments by the Debtor on the Fictitious Loan within one year of the Petition Date (the "Repayments") were payments made to or for the benefit of an alleged creditor of the Debtor.

137.    The Repayments were made on account of an alleged antecedent debt owed by the Debtor before the payments were made.

138.    The Repayments were made while the Debtor was insolvent.

139.    The Repayments were made within one year of the Petition Date to an insider.

140.    The Repayments enabled Mrs. Drumm to receive more than she would receive if the Repayments had not been made, and Mrs. Drumm received payment of such alleged debt to the extent provided by the Bankruptcy Code.

141.    To the extent that the Fictitious Loan constituted an obligation of the Debtor, the Repayments constitute preferential transfers which may be avoided by the Trustee pursuant to 11 U.S.C. §547, and preserved and recovered for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§550, 551.

## COUNT XI
## INJUNCTIVE RELIEF

142.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

143.    The Trustee intends to sell the Stage Neck Property, the Wellesley Property, and the Malahide Property (the "Real Properties").

144.    The net proceeds from the sale of the Real Properties may be the sole or primary available source of recovery for the Trustee with respect to the claims asserted herein against Mrs. Drumm.

145.    Unless the injunctive relief requested by the Trustee is granted, the Trustee will suffer irreparable harm because the Trustee may be unable to obtain satisfaction of her judgment against Mrs. Drumm.

146.    The harm that will be suffered by the Trustee if the injunctive relief is not granted substantially outweighs any harm to Mrs. Drumm if the relief is granted.

147.    Accordingly, the Trustee is entitled to injunctive relief restraining and enjoining the distribution of any proceeds of the sale of the Real Properties, other than payment of allowed secured claims and costs directly associated with a sale, pending a determination of the amount of the Trustee's claims against Mrs. Drumm.

## **PRAYERS FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that this Court enter judgment for Plaintiff as follows:

(i)     Granting judgment in favor of the Plaintiff on Counts I through V, finding that Mrs. Drumm was the recipient of fraudulently transferred property of the Debtor, and issuing a monetary judgment for the value of all property so received;

(ii)    Granting declaratory judgment on Count VI, finding that any interest of Mrs. Drumm in the Wellesley Property should be held in constructive or resulting trust for the benefit of the Trustee;

(iii)   Granting declaratory judgment on Count VII, finding that any interest of Mrs. Drumm in the Stage Neck Property should be held in constructive or resulting trust for the benefit of the Trustee;

(iv)    Granting judgment on Count VIII authorizing the Trustee to terminate the Epiphany Trust;

(v)     Granting judgment on Count IX authorizing the Trustee to sell the interest of both

the Debtor and Mrs. Drumm in the Wellesley Property;

(vi)    Granting judgment on Count X authorizing the Trustee to recover preferential

transfers to the extent that the Fictitious Loan is determined to be an obligation of

the Debtor;

(vii)   Granting injunctive relief on Count XI, restraining and enjoining the distribution

of any proceeds of the sale of the Real Properties, other than payment of allowed

secured claims and costs directly associated with a sale, pending a determination

of the amount of the Trustee's claims against Mrs. Drumm;

(viii)  Awarding Plaintiff, and directing the Defendants to pay Plaintiff, the costs and

expenses incurred in bringing this action; and

(ix)    Granting to the Plaintiff such other and further relief as this Court may deem

necessary and proper in the circumstances.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

26

Respectfully submitted,

KATHLEEN P. DWYER,
Trustee of the Chapter 7 Estate
of David K. Drumm,

By her attorneys,

_____
Harold B. Murphy (BBO #362610)
Charles R. Bennett, Jr. (BBO#037380)
Andrew G. Lizotte (BBO #559609)
John C. Elstad (BBO #654469)
MURPHY & KING
Professional Corporation
One Beacon Street
Boston, MA 02108
(617) 423-0400
agl@murphyking.com

Dated: September 12, 2011
605329